Filed 10/16/14  P. v. Reyes CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SIGIFREDO REYES,<br><br>    Defendant and Appellant. | A139358<br><br>(Alameda County<br>Super. Ct. No. CH53681) |

After appellant, Sigifredo Reyes, entered a plea of no contest to first degree residential burglary charged as a serious felony, the trial court suspended imposition of sentence and placed appellant on probation for five years with the condition, among others, that he serve one year in county jail.  This timely appeal, which is authorized by rule 8.304(b) of the California Rules of Court, challenges four other conditions of probation imposed by the court.

**FACTS AND PROCEEDINGS BELOW**

According to testimony at the preliminary hearing and the report of the probation department, Newark police officers were dispatched to a residence on Lobelia Lane in Newark in response to a report that a residential burglary was then taking place.  When the officers arrived, a black Toyota Camry and red Jeep Cherokee which were parked near the house immediately drove away.  The Cherokee was quickly blocked by Officer Randy Ramos and the driver, Lorenzo Bridges, was detained.  Officer Jeff Revay pursued the Camry and later apprehended the driver, Juan Garcia.  Officer Ramos and another officer accompanied by a police dog then entered the fenced backyard of the house and

1

saw a person, later identified as Jorge Gonzalez, attempting to jump over the fence. Chasing Gonzalez back into the house, the officers confronted another person, later identified as appellant, and arrested both.

The officers observed pry marks on a bathroom window, which appeared to be the point of entry, found that the bedrooms and attic had been ransacked, and found a large safe bearing pry marks lying on its side near a "prying tool."  A camcorder had been taken from a hallway closet and  jewelry and a "change jar" had been taken from bedrooms.

Appellant and his crime partners were charged by the district attorney with first degree residential burglary (Pen. Code, § 459)[1] (count 1) and assault on a police officer (§ 245, subd. (c)) (count 2).  The information alleged that the burglary was a violent felony (§ 667.5, subd. (c)) and the assault was a serious felony.  (§ 1192.7, subd. (c).)  On March 29, 2013 (all dates are in that year), the court granted the prosecution's motion to dismiss the assault count as to appellant.  Two months later, as the result of a negotiated disposition, appellant pled no contest to the residential burglary alleged in count 1, as amended to charge a serious, not a violent, felony.  After appropriate admonitions, the plea was received by the court.

The terms of the parties' negotiated disposition were that in consideration of his plea appellant would receive five years of formal probation and one year in county jail. Appellant agreed to submit to a "four-way search clause,"[2] pay restitution to the victim and stay away from him, and pay a restitution fund fine.

The report of the probation department stated that appellant, who was then 24 years of age, had suffered four prior juvenile adjudications and four prior convictions as

---

[1]  Further statutory references are to the Penal Code unless otherwise indicated.

[2]  This phrase apparently refers to the fact that the search and seizure appellant submitted to includes that of his "vehicle, residence, person, or any property under your control."

an adult, and that all eight offenses were misdemeanors;[3] the instant conviction is his first felony offense. Appellant told the probation officer who interviewed him that: "I have two kids and I used to take them to school every day before I got arrested. I also helped to provide for them. I want to get probation so I can continue to do that." Appellant also indicated that he plans to "go to school, get a job, and stay off the streets," after he is released from custody. Appellant acknowledged that he "associated himself with Norteño" at the age of 15 and until he reached 20, when his first child was born and "he no longer wanted to 'have that lifestyle.' " Appellant has a dot tattooed on his left hand and four dots tattooed on the knuckles of his right hand. In its evaluation of appellant, the probation officer noted that appellant "is willing to comply with [the conditions of] probation because he wants to be involved in his children's lives. He expressed a desire to obtain employment and finish his education upon his release." Acknowledging that appellant "lacks a complete high school education and has been criminally involved since the age of 13," and that he "has not benefitted from prior grants of probation and appears to be a dubious candidate for a new grant of probation," the probation department nevertheless concluded that "because this is [his] first felony conviction and the victim appears to have suffered minimal loss, the terms of the negotiated plea appear to be appropriate."

The probation report recommended that probation be granted for five years subject to 15 terms and conditions, none of which pertain to gangs or gang activities.

On July 12, the court suspended imposition of sentence and placed appellant on five years' probation with the first year to be served in the Alameda County Jail. The court followed the recommendations of the probation report except that it stated it intended to add to appellant's conditions "some of the gang terms that are also found *in Mr. Gonzales*' [*sic*] *probation*." (Italics added.) The sentencing proceedings on July 12

---

[3] Elsewhere, the probation report states that appellant "has three prior misdemeanor convictions and five sustained juvenile findings," but this does not conform to the four juvenile adjudications and four adult convictions specifically identified in the probation report.

related not just to appellant but as well to his codefendants Jorge Gonzalez and Lorenzo Bridges. While the gang terms imposed as conditions on appellant were essentially the same as those imposed on Gonzalez, the probation report on Gonzalez, which the trial court may also have relied on with respect to appellant, is not a part of the record before us. Though defense counsel objected to the imposition of any gang terms on appellant, he never objected to the trial court's stated intention to add "some gang terms that were also found in Gonzales' [probation report]," nor did appellate counsel make the probation report on Gonzalez a part of the record of this appeal.

### APPELLANT'S CLAIMS

The trial court imposed five conditions on appellant in addition to those recommended in the probation report.

The first, and the only one that is not gang related, is that forbidding appellant from associating with any person known to him to have a criminal record, which appellant challenges on the grounds it is unreasonable, as well as vague and overbroad.[4] However, appellant did not make this or any other objection to the condition in the trial court. Because a failure to object to a probation condition at the time of sentencing prevents a defendant from challenging the reasonableness of the condition on appeal (*People v. Welch* (1993) 5 Cal.4th 228), appellant cannot now challenge it here for the first time, at least with respect to reasonableness. Nonetheless, a probation condition must be sufficiently precise for the probationer to know what is required of him, and for

---

[4] At the beginning of his opening brief appellant assigns numbers to the five conditions added by the trial court to those recommended by the probation department, describing them as ordering him to "(1) not associate with any person known to appellant to have a criminal record; (2) not associate with any person known to appellant to be a gang member; (3) not belong to or act in furtherance of or for the benefit of any gang; (4) not wear or possess anything with a gang insignia; and (5) remove any gang tattoos." Confusingly, the rest of the opening brief and the reply brief refer to the foregoing restrictions only by these numbers and denominate them collectively as "gang terms" even though the first does not relate to gangs or gang activities. In the balance of his opening brief and in his reply brief appellant claims that "Gang terms (1), (2) and (5) are vague and overbroad."

4

the court to determine whether the condition has been violated, if it is to withstand a constitutional challenge on the ground of vagueness. (*In re Sheena K.* (2007) 40 Cal.4th 875, 890.) Since we are remanding the case for resentencing with respect to other matters, we shall direct that the trial court also modify that condition to clarify whether the phrase "criminal record" includes a record consisting only of convictions of misdemeanors and/or arrests, and whether it includes a record consisting only of juvenile adjudications.

The four gang related conditions the court also added to those recommended in the probation report include one that appellant does *not* challenge; namely, that he not "belong to or act in furtherance of or for the benefit of any gang."

The remaining three gang-related conditions, all of which appellant challenges, are that he (1) not associate with any person known by him to be a gang member; (2) "not wear or possess anything with a gang insignia"; and (3) that he remove any "gang tattoos." [5]

The Attorney General agrees that the requirement that appellant have his existing tattoos surgically removed is "unreasonable." (See *People v. Lopez* (1998) 66 Cal.App.4th 615, 638.) We agree, and shall direct that the condition be stricken.

_____

[5] The court's minutes of the July 12 sentencing hearing, which by checking boxes on a preprinted form modified the terms orally stated by the court, also added other conditions, including that appellant not "frequent areas known by you to be locations where gang members gather and/or gang activity occurs"; not "wear or possess any clothing/item or display any hand signs . . . with gang significance"; "not possess any graffiti materials, including spray paint, marker pens, and liquid shoe polish"; "not enter school grounds unless enrolled in that school or with prior administrative approval"; "not obtain new tattoos, brands, burns, piercings or voluntary scarring [or] submit to photographing of existing markings"; and that he "[s]tay out of buildings, vehicles, and places where any dangerous/deadly weapons, firearms or ammunition are present."

The parties agree that, as held in *People v. Farell* (2002) 28 Cal.4th 381, 384, footnote 2, citing, inter alia, *People v. Mesa* (1975) 14 Cal.3d 466, 471, the trial court's oral pronouncement of the conditions of probation controls over the clerk's minutes; and that the portion of the minutes of the July 12, 2013 hearing entitled "Conditions" should be conformed to those orally pronounced by the court at the hearing. We shall direct the trial court to conform its minutes to its ruling as modified by this opinion.

The Attorney General also agrees with appellant that the condition that he "not wear or possess anything with a gang insignia" should be modified in two ways. First, by adding that " 'the word "gang" means a "criminal street gang" as defined in Penal Code section 186.22, subdivisions (e) and (f),' "[6] and second, by clarifying that the insignia referred to is one appellant knows to be gang related. We shall direct the trial court to so modify the condition, not just as it appears in the condition prohibiting the wearing of anything bearing "gang insignia" but in all of the gang related conditions.[7]

In light of the foregoing, the remaining issues we are obliged to address relate to only two conditions: the requirements that appellant (1) not associate with any person he knows to be a gang member and (2) not wear or possess anything with a gang insignia. Since we have modified these conditions by defining the word "gang" appellant's claims of vagueness and overbreadth are no longer tenable. The only arguable claims are whether these two conditions satisfy the test set forth in *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*), which we discuss presently.

**THE STANDARD OF REVIEW AND RELATED LEGAL CRITERIA**

The imposition of probation conditions is reviewed for abuse of discretion. (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121.)

---

[6] Subdivision (f) of section 186.22 defines " 'criminal street gang' " as "any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (25), inclusive, or (31) to (33), inclusive, of subdivision (e), having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity."

[7] It has been held that every probation condition proscribing a probationer's presence, possession, association or similar action will be construed to require that action be undertaken knowingly, suggesting it is unnecessary to seek modification of a probation order, such as the ones before us, that fail to expressly include a scienter requirement. (*People v. Patel* (2011) 196 Cal.App.4th 956, 960.) Nevertheless, in order to avoid challenges on this basis, such as the one before us, we shall order the trial court to revise the standard probation conditions form it employs to include a scienter requirement, as was done in *People v. Moses* (2011) 199 Cal.App.4th 374, 380.

The court "may impose and require any or all . . . reasonable conditions" as it "may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer." (§ 1203.1, subd. (j).) Although broad, this discretion is not without limits. It must serve the purposes asserted to in section 1203.1, and that statute has been interpreted to require that "probation conditions which regulate conduct 'not itself criminal' be 'reasonably related to the crime of which the defendant was convicted or to future criminality.' " (*People v. Carbajal, supra*, 10 Cal.4th at p. 1121, quoting *Lent, supra,* 15 Cal.3d at p. 486.) "As with any exercise of discretion, the sentencing court violates this standard when its determination is arbitrary or capricious or ' " 'exceeds the bounds of reason, all of the circumstances being considered.' " [Citations.]' " (*Carbajal*, at p. 1121, quoting *People v. Welch*, *supra*, 5 Cal.4th at p. 233.)

Under the *Lent* test, a probation condition "will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality." (*Lent, supra*, 15 Cal.3d at p. 486.)

## DISCUSSION

Assuming, as appellant claims, that the challenged conditions both regulate conduct that is not in and of itself criminal and are not reasonably related to the crime of which he was convicted, the dispositive issue is whether the conditions—that he (1) not associate with any person he knows to be a gang member and (2) not wear or possess anything with a gang insignia—are or are not reasonably related to future criminality.

Appellant contends they are not related to future criminality "because [he] ceased associating with the Norteño gang over four years ago and because other conditions of probation prevent [him] from engaging in criminal behavior with any member of [a gang]." Appellant expands upon this contention as follows: "[T]he record contains no information to contradict appellant's claim that he ceased associating with Norteño gang members over four years ago. Given this record, this court should consider the

7

relationship between future criminality and [the gang related conditions] in light of other probation conditions which circumscribe appellant's conduct. Notably [the condition], which appellant does not challenge, [which] prohibits him from belonging to, acting in furtherance of, or acting for the benefit of any gang. Other probation conditions require appellant to 'obey all laws and be of good conduct'; not to 'own use, possess, or traffic in any way, narcotics or dangerous drugs; not to 'associate with any person that you believe to be trafficking in any narcotics or dangerous drugs'; not to 'associate with [codefendants] Juan Garcia, Lorenzo Bridges, and Jorge Gonzalez . . .'; not to 'own, use, or possess any firearm or any other dangerous or deadly weapon'; to 'abide by a curfew' between 10:00 p.m. at night and 7:00 a.m. in the morning; and not to 'own, use, or possess burglary tools, jingle keys, [or] spark plugs with ceramic casings.' " The foregoing argument relies on no case law.

It is settled that a probationer may be ordered to stay away from particular persons (*People v. Wardlow* (1991) 227 Cal.App.3d 360, 367) and also to refrain from wearing clothing or insignia associated with street gangs. (*People v. Leon* (2010) 181 Cal.App.4th 943, 951 [condition was not constitutionally overbroad for failure to limit restriction to the defendant's particular gang, but the condition was required to include an explicit knowledge requirement].) Indeed, "[i]t is implicit in every order granting probation that the defendant refrain from associating with improper persons or engaging in criminal practices." (*People v. Cortez* (1962) 199 Cal.App.2d 839, 844.)

The challenged restrictions are unquestionably related to appellant's future criminality. "Association with gang members is the first step of involvement in gang activity." (*In re Laylah K.* (1991) 229 Cal.App.3d 1496, 1501, disapproved on another ground in *In re Sade* (1996) 13 Cal.4th 952, 962, fn. 2.) Appellant admitted to the probation department that he had associated with the Norteño gang from the age of 15 until he was 20 (which was four years prior to his arrest and conviction in this case) and he had tattoos associated with that gang on both hands. Additionally, appellant told the probation officer that since the birth of his first child, he no longer wanted to have a gang "lifestyle." The mere fact that appellant disassociated himself from the Norteño gang

8

four years earlier does not render the challenged conditions irrelevant to his rehabilitation. Appellant's tattoos will constantly provide "visible reminders of his past gang connection" (*People v. Lopez, supra*, 66 Cal.App.4th at p. 626) and he lives in an area in which gang members reside and gang activities take place. Because the challenged restrictions will fortify appellant's professed desire to distance himself from the Norteño gang, they are related to his future criminality. Accordingly, the two challenged conditions satisfy the test set forth in *Lent, supra,* 15 Cal.3d at page 486.

## DISPOSITION

We direct the trial court to modify its minute order and appellant's probation conditions as follows:

1. Strike the probation condition requiring appellant to remove his gang tattoos.

2. Expressly define the word "gang" as it appears in any of the subject probation conditions as meaning a criminal street gang as defined in section 186.22, subdivisions (e) and (f).

3. Expressly include a scienter requirement in all of the conditions in which the word "gang" appears.

4. Modify the probation condition containing the phrase "criminal record" to clarify whether that phrase includes a record consisting only of convictions of misdemeanors and/or arrests, and whether it includes a record consisting only of juvenile adjudications.

5. All other probation conditions shall remain, and the court's minute order shall be amended so as to conform with the modified ruling of the court.

As so modified, the judgment is affirmed.

9

_____
Kline, P.J.

We concur:

_____
Richman, J.

_____
Stewart, J.